[No. 285.  Dceided December 3, 1891.]

F. M. Frost, *Respondent*, v. The Ainslie Lumber Company, *Appellant*.

PLEADING—CORPORATIONS—WAIVER OF OBJECTIONS—INSTRUCTIONS—VERDICT.

Where a complaint against a corporation does not allege the corporate character of defendant, objection thereto is waived by defendant's plea of counter claim as though it were in fact a corporation.

In an action upon contract against a corporation, an insufficient denial of the complaint admits that the person shown to have made the contract sued on was the authorized agent of the corporation.

Where the iustructions proposed by the defendant in an action assume some state of facts on which there is no testimony, and are based upon the defendant's pleadings and not upon the evidence, they should be refused, although stating correct abstract propositions of law.

Where the jury, in an action upon contract, brings in a verdict which, under the pleadings, is either a mistake or a compromise verdict, the court may refuse to receive it, and direct the jury to find for the full sum claimed, or nothing. (Anders, C. J., and Hoyt, J., dissent.)

*Appeal from Superior Court Lewis County.*

The facts in this case are sufficiently stated in the opinion.

*Reynolds & Stewart*, for appellant:

The action of the court in refusing to receive the first verdict by the jury for $287.50, and instructing them that the suit here was upon an express contract, an agreed price for the hay between plaintiff and defendant, was in direct violation of section 16, article 4 of the constitution. The instruction determined issues of fact upon which the evidence was conflicting, thus assuming the province of the jury. *Cahoon v. Marshall*, 25 Cal. 198; *Stier v. City of Oskaloosa*, 41 Iowa, 353; *Siebert v. Leonard*, 21 Minn. 442; Sackett, Instructions to Juries, § 14, and cases cited.

16—3 WASH.

*Maurice A. Langhorne,* and *W. W. Langhorne,* for respondent:

The instructions asked for assume facts as proved which we insist were not proven, and several contain mere abstract principles of law, and should have been refused. *Chicago, etc., R. R. Co. v. Griffin,* 68 Ill. 499; *Conlin v. San Francisco, etc., R. R. Co.,* 36 Cal. 404; *People v. Byrnes,* 30 Cal. 207; *People v. Turley,* 50 Cal. 469; *Thompson v. Lee,* 8 Cal. 276; *Kimball v. Gearhart,* 12 Cal. 39.

The court may rightfully, of its own motion, recall the jury and give them further instructions whenever it considers it necessary to do so. *People v. Perry,* 65 Cal. 568; *Alexander v. Gardiner,* 14 R. I. 15; *Flinn v. Barlow,* 16 Ill. 39; Thompson on Trials, § 2363; Proffatt on Jury Trials, § 457.

The opinion of the court was delivered by

STILES, J.—At the trial of this cause the defendant, at the close of plaintiff's testimony, moved for a nonsuit on the ground that the complaint did not allege the corporate character of the defendant, and that the person who was shown to have made the contract sued on did not appear to have been the authorized agent of the corporation. The complaint contained no other reference to the defendant as a corporation than what was in the title of the action, which was: "F. M. Frost v. The Ainslie Lumber Company, a corporation duly organized and existing and doing business under and by virtue of the laws of Washington." As against a demurrer, perhaps the complaint might have been held defective. But the defendant appeared, and without any objection answered thus: "The defendant, for its amended answer to the complaint herein, denies each and every allegation of said complaint except as hereinafter stated." The remainder of the answer contained a counter claim, and made no reference to the complaint. Under

strict rules of pleading the plaintiff might, upon the insufficient denial of the complaint, have claimed that his case was made without introducing any testimony, thus leaving the affirmative to the defendant upon its counter claim. The agency, therefore, stood admitted, and the allegation that the defendant was a corporation was waived by its pleading a counter claim as though it were in fact a corporation. The nonsuit was properly refused.

The action was brought to recover for twenty-five and one-half tons of hay at $13 per ton, sold by plaintiff to defendant, less $5 admitted to have been paid, in all $326.50. At the time the hay was sold, August 7, 1890, it was piled up, with as much more of the same kind, in a shed on plaintiff's farm. The understanding was that it was to be baled at once and taken away, defendant having itself to do the bailing and hauling. Part of the bailing was done August 8th and 9th, and the remainder August 19th to the 23d. A few tons were hauled to the defendant's place when it was found to be in bad condition, and the remainder was left at the place where it had been bailed, the defendant refusing to remove it on the ground that it was in an unsalable condition when the purchase was made, and that it was not really hay at all, but a mass of weeds and ferns mixed with timothy, which was practically worthless. The defendant also claimed that plaintiff, and his co-owner of the hay, misrepresented its condition and quality for the purpose of inducing defendant to buy, and that it was misled by the misrepresentations. Plaintiff denied the charge of misrepresentation and asserted that he sold the hay at a price below the market rate for good hay, and upon the urgent solicitation of the defendant, after stating to its agent that there was hay there that he would be ashamed to sell to any person. The testimony on all the contested points was too contradictory for any consideration by us, and the court below very properly left its effect to the jury.

The court gave the jury instructions to which there was no exception, but refused to give eleven instructions requested by the defendant, and the principal errors are based upon this refusal. The first of these refused instructions was as follows:

"If the jury believe from the evidence in this case that the plaintiff, in order to induce the defendant to enter into the contract set out in the complaint, represented, or ratified the act of another in representing, that the hay set out in the complaint was good hay, with the exception of some fern, when in fact the hay contained large quantities of other weeds than fern, and also contained wire grass and other obnoxious vegetation, and that said hay, on account of the presence of such weeds and wire grass, or by being improperly cured or kept, was not good hay, and was not suitable for the purposes for which the plaintiff knew the defendant purchased it, then and in that event the defendant had a right to annul the contract and to refuse it or pay for the hay."

This instruction is a fair sample of the whole of those proposed, and its vice is that it was constructed upon the theory of the defendant's counter claim, and not upon the evidence. There was no evidence that the plaintiff made any representation whatever about the hay, or that he invited the purchase of it in any manner. Skinner's half of the hay was brought and partially paid for at $12 per ton by defendant before Frost was approached. Then he refused to sell at less than $14, and not until a subsequent day, and when he was informed that Skinner had sold, did he consent to take $13. No one ever told Frost what Skinner had said about the hay, nor does it in any wise appear that either was agent for the other. Nor did it appear that the hay had been badly cured. It was suggested that bad curing might account for its alleged heated and sweating condition, but it was also stated that so large a pile of hay, at that season of the year, was sure to be in a sweat and in danger of spoiling. Again, all of the instruc-

tions asked were based upon the theory that the plaintiff was the seller of an article for a particular purpose, which article had secret defects unknown to the defendant, and which could not have been known to it until the bailing began. But such was not the case. The hay was piled up twelve or fifteen feet high, and forty-five feet square, and was free to the defendent's agent to examine, and he was invited to examine it. True, he could not have seen very far into the pile, but he scarcely looked at the outside even. Had he examined, he must have seen the character of it, for no one testified that the outside differed from the inside, except that the latter was heated. As to the heating, it appeared that defendant was in the habit of buying large quantities of hay yearly, and its agents were in as good a position to know the probable effect of stacking up such a quantity of hay at that time of the year as the plaintiff. We think it clear that the defendant had notice from the plaintiff that he was not selling first class hay, as it was not disputed that he stated to the agent that other timothy hay which he had could not be bought for less than $17. The court's instructions, we consider, fairly covered the case, and those of defendant, while many of them stated correct abstract propositions, would have tended to confuse the jury, because in each instance they assumed some state of facts on which there was no testimony.

The jury brought in a verdict for $287.50, and the defendant alleges error because the court would not receive it, but told the jury they must find for the full sum claimed, or nothing. In our judgment, the court did precisely right. It was either a mistake or a compromise verdict, which, under the pleadings, the jury could not return. Thompson on Trials, § 2606. On all points, therefore, the judgment is affirmed.

DUNBAR and SCOTT, JJ., concur.

ANDERS, C. J. (*dissenting*).—I am unable to concur in that portion of the opinion of the majority of the court in this case which holds that the court below did right in refusing to receive the first verdict returned by the jury for the alleged reason that it was not for such a sum as was warranted by the pleadings. The law seems to be well settled that the court may require the jury to correct an imperfect or informal verdict, and may send them back to their room for that purpose, or the court may make the amendment, with the assent of the jury, before the verdict is finally received; but where there is no informality or imperfection in the verdict as rendered, it is, in my opinion, the duty of the court to receive it, without making or suggesting any change whatever in its substance. See 2 Thompson on Trials, § 2633; Proffatt on Jury Trial, § 457; Code of Washington, § 238. It is true that a verdict which is the result of a mistake or a compromise will usually be set aside and a new trial granted, and that a judgment based on such a verdict will be reversed; but the refusing to receive the verdict in the first instance is altogether a different matter. To refuse to receive a verdict upon the issues presented to the jury, which is not objectionable in form, it seems to me, is an unwarranted assumption of power on the part of the court. It is virtually a substitution of the opinion of the judge for that of the jury upon matters of fact, and is to that extent an abridgment of the right of trial by jury, the inviolability of which is guaranteed by the constitution of the state. I think it cannot be doubted that the judges are as willing and anxious as juries to do justice between parties litigant, and it may be conceded, generally, that the law would be administered as well without as with juries, but inasmuch as our system of jurisprudence recognizes the jury as an integral part of the judicial machinery, it ought to be left free to pass upon every

issue presented to it, and when it has done so, its verdict, if not defective, should be received and recorded: If it is found not warranted by the law or the evidence, it is then the province and the duty of the court to set it aside, and to order a new trial in conformity with law. I am, therefore, of the opinion that the learned judge before whom this case was tried inadvertently committed an error in refusing to receive the verdict, for which the judgment should be reversed.

HOYT, J., concurs.